NOT YET SCHEDULED FOR ORAL ARGUMENT
_____

No. 18-5261
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

CROSSROADS GRASSROOTS POLICY STRATEGIES,

*Intervenor Defendant-Appellant,*

v.

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
& NICHOLAS MEZLAK,

*Plaintiffs-Appellees*,

FEDERAL ELECTION COMMISSION,

*Defendant-Appellee.*
_____

On Appeal from the United States District Court for the District of Columbia
Case No. 1:16-cv-00259-BAH
_____

**PLAINTIFFS-APPELLEES' SUR-REPLY IN OPPOSITION TO
DEFENDANT-APPELLANT CROSSROADS GRASSROOTS POLICY
STRATEGIES'S EMEREGENCY MOTION FOR A STAY PENDING
APPEAL**

For the first time in its reply brief on its emergency motion, Defendant-

Appellant Crossroads Grassroots Policy Strategies ("Crossroads") argues

1

Plaintiffs-Appellants Citizens for Responsibility and Ethics in Washington and Nicholas Mezlak (together "CREW") lack standing to challenge the validity of 11 C.F.R. § 109.10(e)(1)(vi) because Crossroads's appeal of CREW's claim under the Federal Election Campaign Act ("FECA") is now moot. Crossroads Reply 6–7. Crossroads's argument should be rejected.

**1.** This Court has recognized that while the resolution of a challenge to a specific application of a rule may moot a plaintiff's *as-applied* challenge, it does not moot the plaintiff's challenge to the *facial validity* of a regulation. *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–91 (D.C. Cir. 1986) (holding that while "the appellants' challenge to the standard *as applied to their specific fee waiver request* is, in fact, moot," there is, "however, no question that the appellants' other arguments concerning the facial validity of the DOJ guidelines and the interior regulation are *not* moot"). CREW's challenge to the regulation was both an as-applied and facial challenge. *CREW v. FEC*, 316 F. Supp. 3d 349, 383 (D.D.C. 2018) (noting CREW's standing to bring "a facial challenge to the regulation"). Accordingly, even if CREW's as-applied challenge is moot, its facial challenge is not.

**2.** Moreover, Crossroads simply misrepresents what, exactly, is moot. The statement of reasons given for dismissal on remand superseded the prior statement of reasons given for the FEC's prior dismissal of CREW's complaint. The district

2

court below found that the prior statement of reasons was "contrary to law." *CREW*, 316 F. Supp. at 417. Crossroads sought to appeal that decision. Now that the FEC has abandoned that position and offered a new reason for dismissal, it is Crossroads's *appeal* that is now moot, because the first statement of reasons is no longer the operative statement to be considered in any judicial forum. *See Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1353 (D.C. Cir. 2014) (stating agency's issuance of new explanation for action would moot challenge to prior explanation). Moreover, because Crossroads prevailed on remand, it currently suffers no injury for which it could seek judicial review. *Lakes Pilots Ass'n, Inc. v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004) (party may only seek review of decision remanding case to agency when "it got no satisfaction" on remand). Yet nothing about the remand moots CREW's claim, either against the regulation or against Crossroads's failure to disclose its contributors due to its adherence to the regulation.

**3.** Crossroads also misrepresents the facts at issue in *Cierco v. Mnuchin*, 857 F.3d 407, 416 (D.C. Cir. 2017), the authority on which it relies to question CREW's standing. There, the plaintiffs challenged the legality of two notices that identified their bank as a suspected money launderer, seeking both to have the notices withdrawn and declared unlawfully issued. *Id.* at 410. The notices were in fact withdrawn during the course of the district court litigation, but the plaintiffs

3

sought to continue their challenge to the unlawfulness of the notices. *Id.* The court, however, found the plaintiffs lacked standing to continue that challenge because withdrawal of the notices provided the plaintiffs with "full relief" on all their claims. *Id.*

That is a far cry from the situation here. CREW has not received "full relief" on its claim seeking disclosure from Crossroads of its unlawfully withheld contributors. Rather, on remand, the FEC once again dismissed CREW's administrative complaint because of the existence of the regulation and Crossroads's reliance on it. *See* First General Counsel's Report 15, MUR 6696R (Crossroads) (Aug. 24, 2018), http://eqs.fec.gov/eqsdocsMUR/6696R_2.pdf (recommending dismissal of CREW's complaint on remand, despite finding reason to believe Crossroads violated the FECA, because "it was not unreasonable for a filer to assume that the Commission's implementing regulation set forth all of the legal requirements for reporting independent expenditures"). In other words, the regulation is *still* depriving CREW of its rights to know the contributors for Crossroads's 2012 independent expenditures.[2]

---

[2] *Cf. Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (finding plaintiff lacked standing to continue challenge to rules where it had settled its underlying dispute with the agency during the course of litigation in the district court, and thus received the relief requested); *Maydak v. United States*, 630 F.3d 166, 169 (D.C. Cir. 2010) (holding prisoners' challenge to conditions was moot where prisoners were released from prison and thus the prisoners could not pursue their appeal).

**4.** Crossroads's argument also suffers from the fundamental flaw of relying on a conclusion that the district court lacked jurisdiction to issue its judgment on August 3 because Crossroads's FECA appeal was rendered moot by actions *taken after the district court's judgment.* Crossroads cites nothing, however, to connect that conclusion to its authority which only makes the rather more banal point that a plaintiff's standing to continue to pursue a case to judgment may be undermined where its claims become moot during the course of the proceeding.

**5.** Moreover, beyond Crossroads's mischaracterization of the law, Crossroads also ignores the fact that the very authority on which it relies recognizes that a plaintiff retains standing to challenge the regulation when there are "concrete application[s] that threaten[] imminent harm to [the plaintiff's] interests." *Cierco*, 857 F.3d at 416 (internal quotation marks omitted). Here, there are numerous concrete applications of the regulation that threaten imminent and continuing harm to CREW.

For example, while Crossroads asserts that organizations are refraining from making independent expenditures due to confusion about the state of the law, *see* Crossroads Reply 1, the facts show that assertion is false.[3] FEC data shows

---

[3] Crossroads suggests that its ceased making independent expenditures solely because of the district court's decision below. *See* Crossroads Reply 8. But Crossroads last made independent expenditures back in *2014*, about four years

that groups have been quite active in making independent expenditures since the decision below, spending millions of dollars on them. *See* FEC, Independent Expenditures (last visited Sept. 12, 2018), https://bit.ly/2MphFgB (showing, for example, Americans for Prosperity spent over $4 million on independent expenditures on August 29, 2018). The facts also show, moreover, that CREW is still being deprived of the information to which it is legally entitled as organizations making these independent expenditures continue to refuse to report their contributors. *See, e.g.*, Americans for Prosperity, Form 5 (Aug. 31, 2018), https://bit.ly/2N6Xnhf (reporting "0" in contributions).

Moreover, there is absolutely no reason to think CREW's deprivation will stop anytime soon. 2018 is on pace to be a record breaking year for independent expenditures in a mid-term election, independent expenditures that will be made without any disclosure if the regulation stays in effect. *See* OpenSecrets.org, Total Outside Spending by Election Cycle, Excluding Party Committees, Cycle to Date (last visited Sept. 10, 2018), https://bit.ly/1M8REvf (showing $309 million in independent expenditures in the 2018 election cycle so far). Every independent expenditure report that neglects to disclose the maker's contributors because the reporting entity follows the regulation deprives CREW of vital information to

---

before the district court's decision. *See* FEC, Independent Expenditures (last visited Sept. 12, 2018), https://bit.ly/2N5Xjyc.

which it is legally entitled. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016) (citing *FEC v. Akins*, 524 U.S. 11, 20–25 (1998) (holding plaintiff denied access to information subject to disclosure under the FECA suffered cognizable injury sufficient to support standing)); *see also In re Navy Chaplaincy*, 697 F.3d 1171, 1176–77 (D.C. Cir. 2012) (finding threat of future injury sufficient to support standing where injury was based on existing rules that would be applied in future proceedings that are likely to occur). Moreover, Crossroads itself asserts that CREW will file new complaints; complaints that two commissioners (enough to currently block enforcement) have already promised to subject to the invalid regulation. Crossroads Reply 2, 8.[4]

Crossroads's late and misleading characterization of the facts and law should be rejected. Crossroads's resort to such tactics merely demonstrates its insurmountable task: to demonstrate that it will succeed in showing that a statute

---

[4] Crossroads complains that CREW's entitlement to the information under the statute is an issue it wishes to dispute. Crossroads Reply 10. However, in evaluating plaintiffs' standing, the Court "must assume that [plaintiffs] state[] a valid legal claim." *Info. Handling Serv., Inc. v. Defense Automated Printing Serv.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *see also Shays v. FEC*, 528 F.3d 914, 923 (D.C. Cir. 2008) (informational injury doctrine focuses on whether plaintiff has alleged that, under "[their] view of the law," statute requires disclosure of requested information (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)). Thus, for the purposes of Crossroads's attack on CREW's standing, this Court must assume CREW is in fact legally entitled to know the identifies of all of Crossroads's contributors.

7

that requires disclosure of "all contributions" and identification of contributions funding "an independent expenditure" does not mean what it says and that the agency was free to ignore it.

Dated: Sept. 12, 2018.

Respectfully submitted,

*/s/ Stuart McPhail*
Stuart C. McPhail
*smcphail@citizensforethics.org*
(D.C. Bar. No. 1032529)

*/s/ Adam J. Rappaport*
Adam J. Rappaport
*arappaport@citizensforethics.org*
(D.C. Bar No. 479866)

Citizens for Responsibility and Ethics
  in Washington
455 Massachusetts Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 408-5565
Fax: (202) 588-5020

*Attorneys for Citizens for Responsibility
  and Ethics in Washington and Nicholas
  Mezlak*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1):

[ X ] this document contains [*1,498*] words, or
[ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14pt Times New Roman; or
[ ] this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

Dated: September 12, 2018        */s/ Stuart C. McPhail*
                                 Counsel for Appellees

# CERTIFICATE OF SERVICE

I hereby certify that on September 12th, 2018, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, thereby serving all persons required to be served.

*/s/ Stuart McPhail*
Stuart C. McPhail
